UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:23-CV-00304-FDW-SCR

| | |
|---|---|
| TIMOTHY HAMES, | ) |
| Plaintiff, | ) |
| v. | ) ORDER |
| VSC FIRE & SECURITY, INC., | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on Defendant's Motion for Judgment on the Pleadings (Doc. No. 9). This matter has been fully briefed, (Doc. Nos. 1, 6), and is ripe for ruling. For the reasons set forth below, Defendant's Motion is **GRANTED IN PART** and is **DENIED IN PART**.

## I. BACKGROUND

Plaintiff, a black male, is suing Defendant under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981 for race discrimination, retaliation, and failure to promote. (Doc. No. 1.)

Plaintiff was hired by Defendant on July 7, 2015, as a fire sprinkler inspector. (Id. at p. 3.) In the Complaint, Plaintiff contends at the time of his hire Defendant's Branch President for Charlotte, Greg Weaver ("Weaver"), and HR Manager, Karen Westerman ("Westerman"), led Plaintiff to believe he "would be in line for a Field Superintendent job soon." (Id.) Plaintiff claims that in the time he was employed by Defendant, at least one Field Superintendent position became available. (Id. at p. 5.) And, despite having more than twenty years of experience, he was never called for an interview.

1

On April 2, 2020, Plaintiff claims he reported to Westerman and his Supervisor, Scott Hornbeck ("Hornbeck"), the behavior of a warehouse supervisor. (Id. at 4.) Plaintiff contends this warehouse supervisor would often go on racist rants, calling co-workers racist names and slurs. Ten-days after allegedly complaining, Weaver told Plaintiff he could not conduct his backflow testing side business because he signed a noncompete. (Id.) Both parties admit Plaintiff did not sign a contractual noncompete. (Doc. No. 1, p. 3; Doc. No. 6, p. 3.)

In October 2020, Plaintiff contends one of his coworkers made racists comments in his presence and towards Plaintiff. (Doc. No. 1, p. 6.) On September 15, 2021, in Plaintiff's presence, the same coworker made racial slurs again which Plaintiff subsequently told his supervisor, Hornbeck. (Id.) On or around September 16, 2021, Plaintiff met with Hornbeck and Weaver, and instead of speaking about the previous complaint, Plaintiff was fired for violating Defendant's company policy and non-compete by continuing his backflow testing side business. (Id.)

Plaintiff asserts he notified both Weaver and Westerman of his backflow testing side business at his initial hiring interview. (Id. at p. 3.) According to Plaintiff, Weaver and Westerman said Plaintiff's side business was fine because "the Fire Sprinkler Inspector position did not do backflows and it would not interfere with that job." (Id.)

Plaintiff further alleges differential treatment from his white coworkers, stating he was surveilled more strictly through the GPS locator installed in all Defendant's company cars. (Id. at 5.) Additionally, Plaintiff contends that, while his white counterparts were given raises and review on a regular basis, he "was only given one after two years of asking." (Id.) Defendant corroborates this allegation by indicating Plaintiff received a raise in 2018, two years after being hired. (Doc. No. 6, p. 5.) Plaintiff also states Defendant would require he work more than twenty-four hours straight, whereas white employees were not expected to do the same. (Doc. No. 1, p. 5.)

On March 14, 2022, Plaintiff filed an EEOC charge of discrimination against Defendant, claiming race discrimination and retaliation, and received the Notice of Right to Sue from the EEOC on February 23, 2023. (Id. at 6.) Thereafter, Plaintiff filed this action on May 22, 2023, bringing claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981 for (1) race discrimination; (2) retaliation; and (3) failure to promote. (Doc. No. 1.)

Defendant filed an Answer to the Complaint on June 20, 2023, where they denied Plaintiff's allegations and raised several affirmative defenses. (Doc. No. 6.) Among said defenses, Defendant asserts Plaintiff cannot rebut the legitimacy of his termination because Plaintiff knowingly violated Defendant's "written policies prohibiting outside employment" which he read, agreed to, and signed upon his hiring. (Id. at 12.); see also (Doc. No. 10-1.) In the present motion, Defendant argues the Complaint fails to sufficiently plead facts to state a claim or to sufficiently satisfy the elements necessary for discrimination claims. (Doc. No. 10.)

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) provides that, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleading." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings "tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact." Drager v. PLIVA USA, Inc., 741 F.3d 470, 474 (4th Cir. 2014).

Furthermore, a Rule 12(c) motion is reviewed under the same standards applicable to a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Conner v. Cleveland Cnty., N. Carolina, 22 F.4th 412, 416 (4th Cir.), cert. denied sub nom. Cleveland Cnty. v. Conner, 143 S. Ct. 523 (2022). However, for Rule 12(c) motions, "courts may [also] consider the complaint, answer, and any materials attached to those pleadings" if they are authentic and

3

essential to the complaint. Chapman v. City of Newton, No. 523CV00040KDBSCR, 2023 WL 9103617, at *4 (W.D.N.C. Nov. 22, 2023) (citing Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009)); see also Fed. R. Civ. P. 10(c) (stating "an exhibit to a pleading is part of the pleading for all purposes").

Thus, in resolving a motion for judgment on the pleadings, courts "are required to accept all well-pleaded allegations of [the] complaint as true and draw all reasonable factual inferences in [the plaintiff's] favor." Massey v. Ojaniit, 759 F.3d 343, 353 (4th Cir. 2014). The court, however, need not accept as true "unwarranted inferences, unreasonable conclusions, or arguments," nor accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Id.; Greene v. Town of Lilesville, NC, No. 317CV00638RJCWCM, 2023 WL 5603191, at *5 (W.D.N.C. Aug. 7, 2023).

### III. ANALYSIS

Plaintiff is suing Defendant under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981 for race discrimination, retaliation, and failure to promote.[1] In the present motion, Defendant asserts Plaintiff fails to sufficiently plead facts to state a claim or to sufficiently satisfy the elements necessary for discrimination claims.

Federal Rule of Civil Procedure 8(a) states, "[a] pleading that states a claim for relief must contain…a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Consequently, "a complaint must contain sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A court will find a claim has facial plausibility if "the plaintiff pleads factual content that

---

[1] Discrimination claims under Title VII and Section 1981 are governed by the same standard. See Love-Lane v. Martin, 355 F.3d 766, 786 (4th Cir. 2004); see also Nnadozie v. ManorCare Health Servs., LLC, 792 F. App'x 260, 262 (4th Cir. 2019).

4

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

    A. **Failure to Promote**

Defendant first moves for dismissal arguing Plaintiff does not sufficiently allege a claim for failure to promote within the relevant time limitations and does not allege sufficient facts to support a discriminatory failure to promote. (Doc. No. 10, p. 6–7.) Failure to promote is a discrete act of discrimination. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002). "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice" and "starts a new clock for filing charges". Id. at 113–14. A discrete act of discrimination occurs on the day it happened and is "timely only if the discrete act occurred 180 days prior to the filling of the charge." Raynor v. G4S Secure Sols. (USA) Inc., 283 F. Supp. 3d 458, 464 (W.D.N.C. 2017). The commencement of the limitations period begins the moment the plaintiff is informed of the employment decision. Muir v. Winston-Salem State Univ., No. 1:11-CV-282, 2012 WL 683359, at *5 (M.D.N.C. Mar. 2, 2012). However, "[m]ere continuity of employment without more, is insufficient to prolong the life of a cause of action for employment discrimination." Delaware State Coll. v. Ricks, 449 U.S. 250, 257 (1980).

A Title VII charge must be filed with the EEOC within the 180 days after the alleged discrete discriminatory act occurred, or within 300 days "if the claimant has instituted proceedings with a state or local agency." 42 U.S.C. § 2000e–5(e)(1); Mezu v. Morgan State Univ., 367 F. App'x 385, 388 (4th Cir. 2010); Morgan, 536 U.S. at 112. Here, the 180-day statute of limitations applies because Plaintiff did not institute proceedings with a state or local agency. In the Complaint, Plaintiff states that he initially applied to work as a Field Superintendent, not a Fire Sprinkler Inspector for which he was hired. (Doc. No. 1, p. 3.) Defendant's employment decision

5

regarding his application for Field Superintendent triggered the commencement of the limitations period because Plaintiff was informed of the decision upon his hiring as a Fire Sprinkler Inspector. Based on this timing, Plaintiff's failure to promote claim exceeds the 180-days statute of limitations.

Moreover, in the Complaint, Plaintiff does not indicate he again applied or inquired about an opening as a Field Superintendent. Thus, the mere continuation of his employment after being denied the Field Superintendent position does not prolong the life of an alleged failure to promote discriminatory act. See e.g., Delaware State Coll., 449 U.S. at 257 (holding that a professor's claim for discrimination based on national origin was untimely because being offered a terminal contract to teach for another year, after being denied tenure, is not a continuing violation).

Even if the Court were to consider the allegations Plaintiff made in his EEOC Charge for Discrimination, where he states that in April 2018 he applied for a Field Superintendent position, his claim would still be untimely. (Doc. No. 10-2, p. 1.) The clock starts running the moment a plaintiff is made aware of the promotion decision. Muir, 2012 WL 683359, at *5. In his EEOC Charge, Plaintiff states he was never called to interview for the position after he applied in 2018. The denial of an interview serves as notice that he was not given the promotion; therefore, the clock would have begun running on or around the time of his application. Nonetheless, the 180-days statute of limitations is exceeded because Plaintiff filed the EEOC charge on March 14, 2022, more than three years after the alleged discriminatory act.

Accordingly, because Plaintiff's failure to promote claim falls outside the 180-days statute of limitations, it is untimely. Therefore, Defendant's Rule 12(c) motion is **GRANTED IN PART**, and Plaintiff's claims for failure to promote are **DISMISSED**.

B. **Race Discrimination**

Defendant next moves for a judgment on the pleadings arguing Plaintiff does not allege sufficient facts to support a race discrimination claim. (Doc. No. 10, p. 9–11.) A prima facie case of discrimination is established if: (1) Plaintiff is a member of a protected class; (2) Plaintiff suffered an adverse employment action; (3) Plaintiff's "job performance was satisfactory; and (4) the adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination." Swaso v. Onslow Cnty. Bd. of Educ., 698 F. App'x 745, 747 (4th Cir. 2017), as amended (Aug. 11, 2017). The fourth element can be satisfied if "'similarly situated employees outside the protected class received more favorable treatment.'" Id. (quoting White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004)).

Plaintiff is a member of a protected class because he is a black male. Plaintiff also alleges he suffered an adverse employment action when he was fired on September 16, 2021. Id. at 748 (defining an adverse employment action as one that causes a change in employment status, such as firing). Defendant argues Plaintiff's job performance was not satisfactory and Plaintiff fails to allege sufficient facts to infer that his termination was a result of unlawful discrimination. (Doc. No. 6, p. 12; Doc. No. 10, p. 9.)

In his Complaint, Plaintiff alleges Defendant "heavily relied" on him "for leadership, customer communication, and training other employees." (Doc. No. 1, p. 6.) Both parties agree Plaintiff was terminated for violating Defendant's policy regarding outside business or employment. However, given the other facts alleged by Plaintiff, that reasoning alone does not indicate Plaintiff failed to perform his job satisfactorily. On the contrary, Plaintiff notes how he was often assigned alone to conduct jobs that required two individuals, demonstrating trust and reliance from his employer. Additionally, Plaintiff alleges he made his interviewees aware of his backflow testing side business and was hired despite its existence. Defendant only confronted

7

Case 3:23-cv-00304-FDW-SCR   Document 15   Filed 03/13/24   Page 7 of 11

Plaintiff regarding his side business approximately five years after he was initially hired. Taking these facts into account, the five-year period Defendant took to fire Plaintiff for the alleged violation of the non-compete agreement does not demonstrate Plaintiff performed unsatisfactory work.

Plaintiff further alleges three important facts in support of how his similarly situated white counterparts received differential treatment from him: (1) Plaintiff's white counterparts were given raises and reviews on a regular basis, he "was only given one after two years of asking"; (2) Defendant would require Plaintiff to work more than twenty-four hours straight, whereas white employees were not expected to do the same; and (3) three white coworkers conducted backflow testing and fire extinguisher test on the side and were not reprimanded or terminated. (Doc. No. 1, p. 4, 5.) Together, these facts, which we accept as true at this stage, are sufficient to raise a plausible inference that Plaintiff's termination was a result of unlawful discrimination. See Holloway v. Maryland, 32 F.4th 293, 299 (4th Cir. 2022) (holding the court should consider the reason given for a plaintiff's termination and the additional facts pled by the plaintiff to show that those reasons are pretext for race discrimination). Plaintiff's factual allegations, although vague, "fill in the gaps" to warrant a reasonable inference of discrimination because the differential treatment as alleged raise the inference above a speculative level. Kelly v. Town of Abingdon, Virginia, 90 F.4th 158, 169 (4th Cir. 2024) (explaining that "the circumstances do not warrant a reasonable inference of discrimination" if the court is left to speculate or fill in the gaps regarding defendant's motive).

Discovery may show how and if Plaintiff is distinguishable from his white counterparts, but that conclusion cannot be made based on the present allegations in the Answer or Complaint. See Woods v. City of Greensboro, 855 F.3d 639, 650–51 (4th Cir. 2017) (stating "evidentiary

8

Case 3:23-cv-00304-FDW-SCR   Document 15   Filed 03/13/24   Page 8 of 11

determinations regarding whether the comparators' features are sufficiently similar to constitute appropriate comparisons generally should not be made at…the 12(b)(6) stage").

Accordingly, Plaintiff alleges sufficient facts to support a race discrimination claim and raise his right to relief above the speculative level. Therefore, Defendant's Rule 12(c) motion is **DENIED IN PART**.

C.  **Retaliation**

Defendant next moves for a judgment on the pleadings arguing Plaintiff does not allege sufficient facts to support a retaliation claim. (Doc. No. 10, p. 12–13.) A prima facie case of retaliation is established if: (1) Plaintiff engaged in a protected activity; (2) Defendant took an adverse action against Plaintiff; and (3) Plaintiff shows that a causal relationship existed between the protected activity and the adverse employment activity. Roberts v. Glenn Indus. Grp., Inc., 998 F.3d 111, 122 (4th Cir. 2021).

Here, Plaintiff engaged in a protected activity when he informed his supervisor, Hornbeck, of his white coworkers' racists comments towards him. (Doc. No. 1, p. 6); see also Roberts, 998 F.3d at 122 (stating a protected activity under Title VII includes complaints of discrimination based on "race, color, religion, sex, or national origin" and complaints raised through internal company procedures). Moreover, as previously stated, Defendant took an adverse action against Plaintiff when his employment was terminated. Defendant argues Plaintiff fails to allege sufficient facts to infer the existence of a causal connection between his complaint to Hornbeck and his employment termination. (Doc. No. 6, p. 11; Doc. No. 10, p. 9.)

A plaintiff can establish the third element in one of two ways: first, by alleging the facts suggest the "adverse action occurred because of the protected activity;" or second, by asserting the "adverse act bears sufficient temporal proximity to the protected activity." Roberts, 998 F.3d at

9

123. "A plaintiff cannot establish the causation element of [his] prima facie case where the relevant decisionmaker was unaware of [his] protected activity." Johnson v. United Parcel Serv., Inc., 839 F. App'x 781, 784 (4th Cir. 2021).

In the Complaint, Plaintiff alleges he reported to Hornbeck, his supervisor, on September 15, 2021, when his white coworker made racist comments and said the "n" word. (Doc. No. 1, p. 6.) The following day Plaintiff was called into a meeting with both Hornbeck and Weaver under the presumption they were going to discuss the complaints, instead he was fired. The temporal proximity between the termination and the complaints—one day—and the presence of Hornbeck in the meeting, create a plausible inference that Weaver could have known of the complaints and the termination occurred because of the complaints made by Plaintiff. Additionally, Plaintiff's previous reports to Hornbeck and Weaver in April 2020 regarding a coworker's racists remarks further infer that Weaver could have known of the complaint Plaintiff made in 2021. While Defendant asserts Weaver, nor any other decisionmaker, was aware or "had knowledge of any protected complaint by [Plaintiff] before he was terminated," (Doc. No. 6, p. 11), "[t]he existence of relevant facts alone, or together with temporal proximity, may be used to establish a causal connection between the protected activity and the adverse action." Roberts, 998 F.3d at 123.

The causal connection between Plaintiff's protected activity and termination is furthered by the fact Weaver first brought up Plaintiff's backflow testing side business five-years into Plaintiff's employment and ten-days after Plaintiff made his first protected reporting of racists remarks. Accordingly, the present facts and temporal proximity of the adverse action of termination and protected complaint made on September 15, 2021, are sufficient to raise a causal inference above a speculative level. See Holloway, 32 F.4th at 300 (asserting that "temporal

proximity between an employee's charge of discrimination and an adverse employment action can support an inference that the employer acted because of the charge").

Accordingly, Plaintiff alleges sufficient facts to support a retaliation claim and raise his right to relief above the speculative level. Therefore, Defendant's Rule 12(c) motion is **DENIED IN PART**.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that for the reasons above, Defendant's Motion for Judgment on the Pleadings, (Doc. No. 9), is:

1. **GRANTED IN PART,** as to Plaintiff's claims of Failure to Promote pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981, which are **DISMISSED;**

2. **DENIED IN PART**, as to Plaintiff's claims of Race Discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981; and

3. **DENIED IN PART**, as to Plaintiff's claims of Retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981.

**IT IS SO ORDERED.**

Signed: March 12, 2024

Frank D. Whitney
United States District Judge